JOdcie Maksiialt,
delivered the opinion of the Court.
Tins bill was filed by Whipp and wife, the latter having been,the widow of William L. Northcut, to obtain dower and distribution, in certain land and slaves, &c., formerly the property of Archer Northcut, the father of said William L., and which had been devised by the will of Archer Northcut in the following manner :
The testator first gave to his wife, Sally Northcut, the brick dwelling house, certain slaves by name, also one equal half of his land and such other property and estate (except slaves,) as he might die possessed of, to have and to hold during her natural life, and at her death to go to and descend to his son William L. North-cut, to whom he devised the Salt well on his land ; and the residue of his lands, negroes, and other property, he might die possessed of, together with the portion in manner and form as above bequeathed to his wife, to have and to hold to him and his heirs forever. And he desired that his wife should continue his son with her, and that he should act towards her as a son, &c., &c.
By an explanatory codicil made shortly after the date of the will, it was seated explicitly that the testator’s wife was to have the slaves devised to her, together with such other parts of his land, goods, and chattels, and credits, as shall be an equal half of his estate, to hold and use during her natural life, and then .to his son William and his lawful heirs forever. And to remove doubts as to the disposition to be made of his estate at the death of his wife; and in case of his son William’s dying without lawful heirs, the testator declares that *66 his will is, that should his son William die before his (testator’s) wife, and leaving no lawful heirs, the bequest to him shall be held and enjoyed by his (testator’s) wife during her natural life, and at the death of his wife, she having out-lived his son William, or at the death of his son William, and leaving no lawful heirs, he declares that his will is, that his entire estate, real, personal, and mixed, shall descend and pass to his (testator’s) four sisters, or their heirs, and to the five brothers or their heirs, of his wife,- to be equally divided between the heads of the said families.
The decree ofthe Circuit Court.
A widow i3 not entitled to dower in a life estate which is not de-lermined during the coverture, & of which the hus band was never seized during the coverture: (8 B. Monroe, 202.)— This principle does not however apply to a remainder inslaves thus situated, in the administrator of the tenant in remainder is entitled to the estate in slaves, & the widow to dis tribution,
*66 It appears that after the death of the testator, William, his son, died in the lifetime of Sally Northcut, the testator’s widow, leaving no children, but leaving a widow who afterwards intermarried with Whipp, and Sally Northcutt being dead, they have filed this bill against the ulterior devisees who claim that William L, Northcutt, having died without issue and before the death of Sally Northcutt-, she became entitled to the whole estate during her life, free from his wife’s claim of dower, and that upon the death of said Sally, they became entitled in like manner to the whole estate in fee.
The decree gives to the complainant’s during the life of Mrs. Whipp, one-half of the slaves, and one-third of the lands devised by Archer Northcutt to William L. Northcutt, and one-half of the personalty absolutely, with one-third of the rents of the land and one-half of the hire of the slaves, and provides for a division and assessment accordingly. It is doubtful on the face of the decree, whether that part of' the estate originally devised to the testator’s wife for life, is to be embraced in ascertaining the portion to be allotted to the complainants, or whether the allotment and division is to be made only in one-half of the testator’s estate, being that part originally devised to his son.
As the interest of William L. Northcutt in that portion of the estate which was devised to Sally North-cutt for life, was a remainder after a life estate, which continued until after his death, he never was seized of *67 that portion so as to entitle his wife to dower in the land, as was decided in the case of Arnold’s heirs, &c., vs Arnold’s administrator, &c., (8 B. Monroe, 202.) And it is well settled upon principle and authority that by the. common law, the right of dower does not attach upon a remainder in fee in the husband, expectant upon a freehold estate in another not terminated at the death of the husband, because he has no seizin. This principle of the common law has not been altered by any statute in this state, but still prevails. We are not aware however, of the same principle having been applied to the case of slaves and personalty, in which the husband may be entitled to a future interest to take effect in possession, after a life estate or interest in another which has not term¡náted at his death. It is not necessary that a mail should have had actual possession of a chattel to make it a part of. his personal estate coming, within the meaning of the terms “goods and chattels,” and in the 28th section of the act of 1797, (Stat. La.wf 660,) which regulates the distribution of intestate’s estates. The intestate’s right to the. chattel, though dependent as to enjoyment upon the termination of an unexpired interest for the life of another, vests in his administrator, and is subject to distribution when the time of enjoyment arrives, if not before. And if the intestate’s widow be alive at that time, we suppose she is entitled to her distributive portion with the other dis-tributees, as if the chattel had been in possession at the death of her husband.
Where there be no children of the marriage the widow is entitled to half the slaves of the husband, and half the personal estate after debts paid:— (Tibbs vs Tibbs’ Executor, 7 B. Monroe, 112.)
If therefore, there be no other objection to this part of the claim, but that which arises from the fact that W. L. Nothcutt, the first husband, had only a future interest or remainder in the slaves and personalty devised to Sally Northcutt for life, and that he died before the termination of the life estate, we should be of opinion that at the death of the devisee for life, the widow of the devisee in remainder is entitled to a distributive share of the slaves and personalty then coming into possession. And as in this case, the intestate husband left no *68 children, his widow, according to the opinion of the Court in Tibbs vs Tibbs’ executor, (7 B. Monroe, 112,) would be entitled to one-half of the slaves for life, and one-half of the personalty absolutely, as decreed.
But it is insisted that under the will and codicil of Archer Northcutt, the interest of his son William in the entire estate devised by the will, was terminated by the event of his death without children, during the life of the testator’s wife; and that the right of W. L. North-cutt’s widow in that estate, being derived from and dependent upon that of her husband, ceased also at his death. The correctness of this conclusion depends upon the question whether under the will and codicil, an estate tail was devised to W. L. Northcutt, or a fee simple defeasible on his death without leaving children. If an estate tail was devised, then that estate being converted into a fee simple absolute by the statute of 1796 docking entails, his widow is certainly entitled to dower and distribution as she Would have been in England, had the estate remained an estate tail. But if the will should be construed as giving him a fee simple defeasi-ble on contingency, then as that contingency has happened by his death without children, the important question arises, whether the derivative interest of his . widow was not wholly defeated as to land, slaves, and personalty, by the same event.
Upon the construction of the will, we think there is little difficulty, and especially in reference to the event which has actually happened, of the death of W. L„ Northcutt without children, during the life of the testator’s widow.
As the ultimate devisees are persons who would be heirs of William, on his death without leaving descendants, there is no doubt that the words ‘lawful heirs,’ used in describing the contingency on which the ulteri- or devises are to take effect, should be understood in the sense of heirs of his body, or lawful issue, or descendants, or children. And the codicil may be read as if the words ‘heirs of his body,’ or ‘lawful issue *69 were inserted instead of lawful heirs. But whatever, upon the authority of the adjudications in England and in many of the United States, might be said of the effect of the words ‘dying without'issue, or heirs of his body,’ used without other restrictive words to describe the contingency on which a further devise or disposition of the estate is made, and although some of these cases decide that even the word ‘leaving,’ in the phrase, ‘if he die, (or on his death) leaving no issue or heirs of his body,’ would not be sufficient to restrict the failure of issue on which the devise over was intended to depend, to the time of the death of the person spoken of as dying without leaving issue, it is clear, even upon the British authorities, that if the words, ‘dying without issue,’ or others deemed equivalent, are accompanied by other restrictive words or circumstances in the will, plainly indicating that the death of the persons leaving no issue at that time, is the contingency referred to, such reference to a failure of issue, or heirs of the body, will not convert into an estate tail, an estate devised by previous words proper to create a fee.
A devise oí slaves to one and his heirs forever,, but if he die without lawful heirs before the wife of the testator, then to the latter for life &c Held that the testator tools a defeasible lee & not a fee tail: (8. B. Monroe.)
Here, then, is a devise to William and his heirs forever, which gives a fee simple, and there are plainly two contingencies described on which ulterior devises are made, and to different persons. The first is, if William should die before testator’s wife, and leaving no lawful heirs, (say, of his body,) and in that case, which actually happened, the bequest to him, that is, the estate devised to him, is to be enjoyed by testator’s wife for life. Here are not only express words, limiting the contingency of W.’s death without issue to the life of the testator’s wife, but the same instruction is implied in the devise over on the contingency stated, .to the wife for life. Each of these circumstances has been held sufficient in numerous cases, beginning .with that .of Pells vs Brown in England, and coming down to that of Deboe vs Lowen, in this State: (8 B. Monroe.) to be sufficient to repel the implication of an estate tail, and to sustain the devise over as an executory de *70 vise, making the first estate to which the contingency is annexed, a fee simple, subject to be defeated by the happening of the contingency.
This contingency of the death of William, without heirs of his body in the lifetime of his mother, having actually happened, the devise for life to the testator’s wife, of that portion of his estate which had been at first given to William by immediate devise, was valid, ■and took effect in possession, and the entire estate vested by the will in the testator’s wife during her life. The will then proceeds with the case first provided for, and which has actually happened, of the wife being invested with the entire property for life, and says: “And at the death of my wife, she having outlived my son William, or at the death of my son William, and leaving no lawful heirs, (of his body) the entire estate shall descend and pass to the persons described as ultimate de-visees.” That is, at the death of his wife, she outliving his son, who is supposed to have died without issue, the estate is to go to the ultimate devisees. Or, at his son’s death, and leaving no heirs — that is, at his son’s death, after that of his wife, the estate is to go to the same persons. The alternative case provided for after the word ‘or’ must be that of the wife not outliving the son, because the case of her outliving him is provided for» by giving her the estate for her life, in that event, and it is obvious that the ultimate devisees were not to have the estete at the death of the son without issue, in the lifetime of the wife, but only in the case of his death without issue, at or after the death of the wife, and when she could not take the interest devised to her.
Then the will gives the entire estate to the ultimate devisees on either of two contingencies. If the son dies without leaving issue before the death of testator’s widow, then she has a vested interest in the whole estate for her life, with remainder to the ultimate devi-sees. If the son survives the wife, the whole estate vests in him in possession, and in fee, subject to the devise over on his death without, leaving issue. If the- *71 soli had survived the wife, and then died without descendants, the question would have arisen whether the words, “and leaving no heirs,” used in reference to this contingency, mean, as in the previous clause, descendants living at his death, or whether the phrase “at the death of my son W. and leaving no heirs,” should be understood as referring to an indefinite failure of issue, and as indicating an estate • tail. But, although we might be inclined to adopt the former interpretation, we think the question does not arise in this case, and therefore do not decide it; because there is a clear devise to the testator’s wife for life on the death of his son without issue in her lifetime, with a devise over to the defendants on her death. And each of these devises being certainly valid, the ultimate devisees are entitled, under these devises, in the contingencies which have happened, and it is immaterial whether they would or would not have been entitled, if the other case, on which the same estate is devised to them had occurred, instead of that which actually did occur.
Where an estate in fee is made determinable upon some-particular event, and that event happen dining the coverture no right of dower or curtesy exists: (Cruise Dig.,Tit. Dower, Chap. 3, sec. 7) but whea land is given to a man or a woman & the heirs of his or her body, the surviving wife is entitled to dower, and lite husband to cur-tesy if issue has been bom alive: (8 Coke Hep., 3d.)
*71 Then the question is — Whether, as the estate of W. L. Northcutt was defeasible on a contingency which has actually occurred, and as upon that contingency the will passes that estate over to the wife of the testator for life, and then to others who claim, they must take it subject to the claim of dower and distribution, on the part of the son’s widow. With respect to distribution, that is, to the personal estate and slaves, we think there is not much difficulty in this question,-because no right in these subjects attached to the wife daring the coverture, and her rights depend solely upon the condition of her husband’s title and interest at or after his death, and she had no right to them because they were devised over to others. But, with respect to the land devised immediately to the husband in fee, the question is not free from difficulty.
Upon this question the first idea that presents itself is that dower being an estate growing out of that of the husband or incident to it, cannot from its nature exist *72 after the estate to which it is attached has ceased. In accordance with this idea it is certain that if the fee be evicted by title paramount, or be determined by entry of the donor for condition broken, dower and curtesy necessarily cease. So in case of a qualified or base fee, dower and curtesy cease when the estate is determined. And it is said by (Cruise Digest Tit. Dower Ch.t 111 sec. 27) that where an estate in fee is made determinable on some particular event, if that event happens dower and curtesy cease with the estate. On the other hand it is well settled in the English common law, that in the case of an estate tail dower and curtesy continue after the estate is determined, as, where land is given to a man or a woman and the heirs of his or her body, and the donee marries and dies leaving no heirs of the body, the surviving wife is entitled to dower or the husband if there had been issue born alive do^^jjje-sy, th/ough the estate of tail is determined aWai'di^^to^ its own limitation, and the interest of the donor or remainder man becomes immediate. In Paine’s case: (8 Coke Rep. 34,) where this question as to curtesy was decided in favor of the surviving husband against the remainder man, the argument that the derivative estate must cease with the primitive, was answered by the Court by saying in effect that the right to curtesy was tacitly implied in the gift, and that it was not derived merely out of the estate of the wife, but was given to the husband by the privilege and benefit of the law, for as soon as he had issue his title became initiate, and ■could not afterwards be defeated by death of the issue, which being the act of God, ought not to turn to his prejudice. This reasoning applies substantially to the wife, whose title to-dower is also initiate during the coverture, notin consequence ofthebirthof issue, which is not necessary, but by the mere fact of marriage and of the husband’s being seized of an estate of inheritance which any issue of the marriages might inherit. Accordingly it is held as already stated that the surviving wife of a donee in tail is entitled to dower, although by *73 lire death of her husband “without issue the estate tail is determined. The estate tail must however, have been of such a character as that any issue which she might have had by the marriage might by possibility have inherited it as heir to her husband; and so in the case of curtesy, the issue actually born must have been such as according to the terms of the entail might inherit the estate as heir to the wife.
In all cases where the husband is seized of such an estate in land as that the issue of the wife may inherit, if any she have, as heir to the husband, the widow is dowable out of such estate; (Littleton on Tenures, Sec. 52,) whether any issue be born to the husband or not: (2 Atkins, 46, 1740; 3 Bos. & Pul. 654, in note, 25Geo. 3d; 2 Bingham, 446, 1825; 2 Simons, 249, 1828; Bell on Property, 67 vol. Law Lib., 272; Bisset on Estates for Lile, page 81, ,et. seq. Law Lib., side page, 38, et. seq.
In Littleton’s treatise on Tenures, sec. 52, it is laid down “that in every case where a man taketh a wife seized of such an estate of tenements, &c., as the issue, which he hath by his wife, may by his possibility iuherit the same tenements of such an estate as the wife hath, as heir to the wife; in this case after the decease of the wife, he shall have the same tenements, by the curtesy of England, but otherwise not. And also, in every case where a woman taketh a husband seized of such an estate in tenements &c., so as by possibility it may happen that the wife may have issue by her husband, and that the same issue may by possibility inherit the same tenements, -of such an estate as the husband hath, as heir to the husband, of such tenements she shall have her dower, and otherwise not.” And he proceeds to state the case, if tenements be given to aman and to the heirs which he shall beget of the body of his wife, yet if the husband die without issue, the same wife shall.be endowed of these tenements ; “because (as he says) the issue which she by possibility might have had by the same husband, might have inherited the same tenements.” And yet in this case and in every one in which tenant-in tail dies without such issue as could inherit the estate as his heir in tail, it would seem that the estate is determined except so far as in contemplation of law, and as was said in Paine’s case with regard to cur-tesy, by privilege and benefit of the law, it is prolonged or continued for the sake of the wife’s dower.
It is to be observed that Littleton says, in every case in which the wife might have issue which might inherit as heir of the husband, she shall be endowed. And ah *74 though Coke in his commentary upon this section, (40 a) mentions some exceptions to this rule, they seem to-be founded upon statutes or on peculiar considerations-not applicable to the case before us. Plere W. L. Northcutt had in the land devised to him, an estate in fee, defeasible indeed, on the contingency of his death1 without leaving lawful issue, but which was an estate of inheritance in him up to the last moment of his life,- and which unless aliened by him, not only might but must have descended on his death to any issue of the marriage then living. In the case of an eviction by title paramount or of entry for breach of a condition and other similar cases, the estate is absolutely at an end though the husband be living, and although he be dead leaving issue on other heirs. Here as in the case of an estate tail, the husband may rightfully enjoy the estate during his life, and at his death it is continued in his heirs if there be any of the designated character. And as the possibility that the wife might have had issue that might have inherited, be sufficient, though there be no such issue in fact to sustain the right of dower, it would seem clear upon analogy that under the rule stated by Littleton the possibility of such issue should sustain the right in this case of a defeasible fee in the husband.
But this conclusion does not rest solely upon the ground of analogy, nor is the rule laid down by Little-ton now to be applied for the first time to an estate like that before us. The cases of Sumner vs Partridge, (2 Atkyns, 46, in 1740,) Buckworth vs Thirkell, (3d Bos & Pull, 654, in notes, 25th, Geo. Ill.) Moody & Wife vs King, (2 Bingham, 446, 1825, 2d Simons, 249, 1828,) in each of which either curtesy or dower was demanded, the right in each case was made to depend exclusively upon the question whether the issue of the marriage took or would have taken as heirs of the deceased wife or husband. In Sumner vs Partridge, cur-tesy was denied, because in the opinion of the' Chancel-lo,r, the children of the deceased wife took as purcha- *75 •sei’s under the devise, and could not have taken by descent from her. In the case of Barker vs Barker, cur-tesy was also denied, because under the construction given to the devise, the children of the wife took as purchasers, and could not take the estate as her heirs.
In Buckworth vs Thirkell, the estate was devised to trustees, in trust for M. B., till she attained twenty-one or married, and then to the use of her and heirs, with a devise over in case she should die under the age of twenty-one, and without leaving issue. M. B., married and had a child, so that the fee was in her under the devise, but the child died, and then the mother died under twenty-one. Lord Mansfield stated the rule from Littleton, and concluded by saying : “ During the life of the wife, she continued seized of a fee simple, which her issue might by possibility inherit.” And issue having been born, curtesy was allowed. As curte-sy and dower are almost identical in respect to the nature of the estate out of which they may arise, the case just cited might be regarded as sufficiently in point to form a precedent for the one before us. But the case of Moody and wife vs King, being upon the question of dower itself, is more directly applicable.
In that case (2 Bingh, 447,) lands were devised to W. F., and his heirs forever, (charged with an annuity,) “and if W. F., should have no issue, the estate is on the decease of W. F., to become the property of the heir at law, subject to such legacies as W. F., may leave to the younger branches of the family.” W. F., who was seized under the will and married, having died without issue, a bill was filed by his widow and her second husband claiming dower and an account, &c. The question whether the widow was entitled to dower out of the estate which W. F., took under the will, was referred to the Court of Common Pleas, and was decided sn favor of the right of dower. In the opinion, of the-Court, the rule from Littleton is stated, as. furnishing a test of the right of dower at once simple- and just, and it is said, “The children of W. F., must have inherited *76 an estate in fee simple indefeasible, had any survived him, and the executory devise would have been at an the case of his widow comes within the rule of Littleton.” And it is added that, “It would be a strange anomaly that the widow of one whose issue can only be tenants in tail should be dowable, and she whose children would be tenants in fee by inheritance from their father, should not.”'
Shuck for appellants; Fox,.Bell,, and Robertson, for appellees.
In Bissett on estates for life, pa. 81,. and seq. (,42nd No. Law Library, side page 58, and sey.,) and in Bell on property, 272, (67th yoL, Law Library, side page .186,) the rulé is stated according to the doctrine of these cases. Upon principle and authority therefore, we are satisfied the true and substantial test of the right of dower is, that the issue of the wife by the marriage, might inherit the estate from the husband as his heir or heirs. And as W. L. Northcutt had in the lands devised to him immediately in fee, an estate of inheritance which must, have descended on his death to any surviving issue of his marriage, we are satisfied thatalthough he died without leaving such issue, his widow is entitled to dower in that land. But she is not entitled to dower in that portion of the land devised in the first place to the testator’s widow for life, nor to distribution of the slaves or personalty devised to her husband, -W. L. Northcutt.
Wherefore the decree is reversed and the cause remanded with directions to render a decree denying the claim of the complainants except as to dower in the land devised immediately to her first husband, W. L. Northcutt, and decreeing to Mrs. Whipp her dower in that land by proper allotment, and allowing her reasonable rents for the period during which it may be withheld from her.