It appears that W. F. Grubbs died on or about June, 1907, intestate, and domiciled in said county of Northampton. The plaintiff is the duly qualified and acting administrator of his estate, and the defendants are his widow and child and only heir at law. That at the time of his death said W. F. Grubbs was the owner of certain standing timber in said county, under and by virtue of three deeds, bearing date in the year 1905, which conveyed to said intestate all the timber, except the oak, standing and growing upon certain lands, properly described and bounded, which would measure 10 inches across the stump at the time of cutting, etc., to him and his heirs and assigns, forever, with the right to enter on said lands, build tramroads, etc., and cut and remove said timber at any time, as to the first deed, within eight years from the date, with privilege of two more on (86) certain specified conditions; and as to the second and third deeds, "at any time within five years from the date, with the privilege of five more on certain specified conditions." That the intestate having died holding the interest conveyed to him by said instruments, and before the time limited for the removal of the timber had expired, the plaintiff, his duly qualified administrator, brought this action against his widow and heir at law, claiming that the timber standing and growing on said land embraced in the deeds was personal property, and his claim was resisted by the widow and heir at law, claiming that same was realty and, as such, belonged to defendants.
The court, being of the opinion that, under and by virtue of the terms of the three deeds, the timber then standing and growing upon the lands therein described was personalty, gave judgment for plaintiff, and defendants excepted and appealed.
After stating the case: There are courts which hold that in deeds and contracts for the sale of standing timber which evidently contemplate an immediate severance of the timber, or severance within a reasonable time, but conferring no beneficial interest in the soil for the purpose of further growth, such timber shall be considered as personalty, and the validity and effect of contracts concerning it shall be construed and treated in most respects as affecting that kind of property. 2 Page on Contracts, p. 992; Ewell on Fixtures (2 Ed.), 45, note 12; McClintock'sAppeal, 71 Pa., 365; Huff v. McCauley, 53 Pa., 206; Marshall v. Green, I. C. P. Div., 39. In 2 Page on Contracts, 991, 992, the author, after saying that growing trees, other than trees in a nursery, are held in most jurisdictions to be realty, and that a contract for the sale of growing timber, as such, to be removed by the vendee, is within the *Page 63 
clause of the statute of frauds requiring contracts concerning (87) land to be in writing, states the doctrine maintained by the courts, above referred to, as follows: "Some American courts follow the rule which, after much vacillation, was finally adopted by the English courts, that if the parties in contracting contemplate the sale of growing trees solely as chattels, and do not intend that they shall remain attached to the realty for an indefinite or unreasonable time, and do not intend that they shall derive a benefit from allowing them to remain attached to the realty, the contract is not within this clause of the statute. Some jurisdictions hold that if the contract for the sale of growing trees contemplates an immediate severance of them from the soil, they are to be treated as personalty, and hence not within this clause of the statute; while, if they are to be removed at the discretion of the vendee, they are realty and within the statute." And the English rule to which reference is made is thus stated by Lord Coleridge in the case of Marshall v. Green, supra, p. 39, and quoting from Sergeant Williams in Saunders' Reports the case of Duppav. Mayo: "The principle of these decisions appears to be this: that wherever at the time of the contract it is contemplated that the purchaser should derive a benefit from the further growth of the thing sold, from further vegetation and from the nutriment to be afforded by the land, the contract is to be considered as for an interest in land; but where the process of vegetation is over, or the parties agree that the thing sold shall be immediately withdrawn from the land, the land is to be considered as a mere warehouse of the thing sold, and the contract is for goods." Some of the decisions have gone so far as to hold that, although the time limited for the removal of the timber may have expired, if the vendee afterwards enters and cuts and removes the timber, the vendor might sue him and recover damages for breaking the close, by action in the nature of trespassquare clausum fregit, but he could not recover the value of the timber. The views announced in these decisions have not prevailed with us. On the contrary, this Court has uniformly held that standing (88) or growing timber is realty, and that deeds and contracts concerning it are governed by the laws applicable to that kind of property. Brittainv. McKay, 23 N.C. 265; Whitted v. Smith, 47 N.C. 39; Ward v. Gay,137 N.C. 397. In some of our former decisions there was intimation given that, in contracts of this kind, where the growing timber was absolutely conveyed and the time of removal was limited to a definite number of years, the effect of such a contract was to create a lease; but in Bunch v. LumberCo., 134 N.C. 116, decided intimation was given that such a construction of the contract was not the correct one; and in Hawkins v. Lumber Co.,139 N.C. 160, the Court decided that such an instrument was not a lease, but "conveyed a present estate of absolute ownership *Page 64 
in the timber defeasible as to all timber not removed within the time required by the terms of the deed." Hawkins v. Lumber Co., 139 N.C. 162. This case has been approved in several recent decisions of the Court.Mining Co. v. Cotton Mills, 143 N.C. 307; Ives v. R. R., 142 N.C. 131;Lumber Co. v. Corey, 140 N.C. 466. As said by Walker J., inIves' case, "It may now be taken as settled that growing trees are a part of the realty, and a contract to sell and convey them, or any interest in or concerning them, must be reduced to writing." These authorities also clearly establish that, on the expiration of the time stated in such a contract within which the timber may be removed, all right in the vendee shall cease and determine, and the estate in so much of the standing timber as has not by that time been severed shall revert to the vendor; and both positions are upheld in numerous and well considered cases in other jurisdictions. McCumber v. R. R., 108 Mich. 491; Williams v. Flood,63 Mich. 493; Lumber Co. v. Hines, 93 Minn. 505; Shasson v. Montgomery, 32 Wis. 52. Our decisions, then, having established the principle (89) that standing timber is realty, "as much part of the realty as the soil itself" (Douglas, J., in Lumber Co v. Hines, supra); second, that deeds and contracts concerning it must be construed as affecting realty; and, further, that in instruments conveying the growing timber to be removed within a definite time the title to all timber not severed within the time shall revert to the vendor — we hold that the deeds now under consideration, which conveyed to the intestate, to him and his heirs and assigns, all the standing timber on certain described tracts of land which should measure 10 inches when cut, and to be removed within ten years, created an estate in such timber in fee, not pure and simple, but qualified and debased by the provision that, in case the trees should not be severed within the time, the title to same should revert, and rendered the estate a qualified or base or determinable fee. Some anomaly may be suggested as a result of this position, more apparent, however, than real, and arising chiefly from the fact that the property changed its nature by the act of final and complete appropriation. But these difficulties are inherent from the nature of the property, and would exist in any construction that would be placed on such a contract, and we think that the instrument should be construed as of the time when it takes effect and the interest is created, and in reference to the property in its then condition; and so construing these deeds, they convey a determinable fee in realty. It is objected that the estate could in no event be a fee, in that it lacks one of the essential requirements of such estates, that it might by possibility endure forever, whereas this estate must at any event terminate within ten years. Such a possibility is generally held to be an essential feature of an estate in fee, and, if applied in strictness to these instruments, the requirement *Page 65 
might be met by the fact that the interest conveyed includes the right of absolute appropriation by severance. But such a requirement, by authority, has not been universally held to be essential. Thus, my Lord Coke, in Lifford's case, 2 Coke, 91, says: "A man may (90) have an estate in lands as long as a tree shall grow, because a man may have an inheritance in the tree itself." Dr. Minor, speaking of this and like estates, makes this comment: "By parity of reason, leaving authority out of view, it would seem that an estate limited to A. and his heirs until Z. should return from abroad was of like character with that just described, and that both might be properly denominated descendible freeholds; the estate in the case last stated passing to the heirs of A. if he dies before Z. returns, and, upon Z.'s death without returning, ceasing altogether. So, in like manner, a limitation to A. and his heirs, as long as a tree shall grow, would seem to be not properly an estate of inheritance, not even a base fee (since it cannot by possibility continue forever), but only a descendible freehold, inuring after A.'s death to his heirs by the effect of the special limitation until the tree falls, and then coming to its appointed end. Adverse authorities, however, are too numerous and strong to admit of this construction, and both the cases supposed are to be deemed estates of inheritance — that is, according to the more rigorous analysis of Plowden and Preston, determinable fees.Walsingham's case, 2 Plowd., 557; 1 Prest. Est., 432, 441." 2 Minor's Institutes, 98, 99. The estates then conveyed by these deeds, being in the nature of determinable fee in realty, are subject to the laws of devolution and transfer applicable to such estates, and on the death of the intestate it follows that the estate passed to his heirs, subject to the dower interest of his widow; the dower, however, partaking of the same infirmity which attaches to the estate from which it is derived. Pearson's Lectures, p. 130; 2 Minor's Institutes, 87-129; Hopkins on Real Property, 88. In reference to such estates, this last author says: "Dower attaches to determinable estates, but is defeated by the happenings of the event which terminates the estate. If this occurs before the husband's death, dower never becomes consummate; if after his death, the enjoyment of the land assigned as dower is (91) cut off." This statement of the doctrine must be taken with the limitation in this State that it only applies when the estate of the first taker is determined by an event entirely collateral, and does not apply to a fee determinable on the death of the first taker and passing a substitute estate by way of executory devise. 4 Kent Com., 49, where the author says: "So dower will be defeated by the operation of collateral limitations, as in the case of an estate to a man and his heirs so long as a tree shall stand, and, in case of a grant of land to A. and his heirs, till the building of St. Paul's Church is finished, and the contingency *Page 66 
happens. Whether dower will be defeated by a collateral limitation by way of shifting use or executory devise is hitherto an unsettled and vexed question, largely discussed in the books." The quaere here suggested by the learned author has been resolved with us in favor of the widow's dower in a decision of much learning by Ashe, J., in Pollard v. Slaughter, 92 N.C. 72, and other courts of the highest authority have taken the same view.Northcott v. Whipp, 51 Ky., 65-73.
We are referred to Ewell on Fixtures (2 Ed.), p. 45, note 12, where a large number of cases are cited as tending to show that these deeds present a case of constructive severance, and the interest created should be considered as personalty. The author here classes growing trees with fixtures, and lays down the doctrine as claimed. A reference to these authorities, however, will show that they refer chiefly to fixtures proper, or to growing crops, about which there has been great diversity in the decisions, arising in many instances from different statutory regulations; or they were cases in jurisdictions which hold, as those referred to in the outset, that contracts for sale of standing timber, when an immediate severance is contemplated, create an interest in personalty, a principle which we have endeavored to show has not obtained with us. (92) Even in jurisdictions where this doctrine prevails it is held not to obtain when a beneficial interest in the soil is conferred for the purpose of future growth; and in the present case the contract passes the trees to be taken off in ten years and measuring 10 inches when cut, thus passing a beneficial use of the soil for the purposes of growth; so that in any event the estate created by these deeds would be held to be realty.
We are of opinion, therefore, and so hold, that on the death of the intestate the estate created by the deeds devolved upon his heir, subject to the right of dower in his widow, both interests determinable as to all timber not removed within the time specified in the deeds. There is error.
Judgment reversed.
Cited: Bateman v. Lumber Co., 154 N.C. 251; Williams v. Parsons,167 N.C. 531; Fowle v. McLean, 168 N.C. 540; Timber Co. v. Wells,171 N.C. 264. *Page 67