FROM ONSLOW.
In making up the jury it was alleged on the part of the State, and assented to by the counsel for the prisoner, that the jury, ought to be entirely composed of slave-owners. The question being considered doubtful by his Honor, he consented to the adoption of that rule in this case, especially as it could not operate injuriously to the prisoner. Two jurors were challenged by the prisoner for cause, and the cause shown was that they were not slave-owners; under the rule adopted the challenges were allowed. Afterwards a challenge for the same cause was made by the State, and objected to by the counsel for the prisoner, but was allowed by his Honor. A jury was made up from the panel without exhausting the peremptory challenges of the prisoner.
Upon the trial it was proved that the body of the deceased was found on the morning of Thursday, 27 November, 1828, on the side of the road. There were appearances of a fierce conflict between two men for the distance of thirty-five yards, within which space, and within twelve yards of the body, the following paper was found: (218)
"Permit Arthur to pass and repass till Monday morning next, 23 November, 1828. HENRY SHEPPARD."
Sheppard, the person who signed the paper, testified that he wrote this permit by the direction of the prisoner's master, and that he delivered it to a little boy, the son of the prisoner, to carry it to his father. On this evidence the counsel for the prosecution moved to read the paper to the jury, which was objected to by that of the prisoner. His Honor, thinking there was sufficient evidence of the receipt of the paper by the prisoner to entitle the State to read it to the jury, overruled the objection; but his Honor at the time the paper was read informed the jury *Page 140 
that if they should believe the prisoner actually received the permit when it was written they would give to that circumstances such weight as they thought proper; but if they should think that the prisoner never received it, then that they should exclude from their consideration all the evidence relative to it.
The prisoner was convicted of the charge, and appealed to this Court.
Trial by jury is one of the boasted privileges of our country. The law secures to every man accused of crime a fair and impartial, by a jury of good and lawful men, free from all exception. By a jury of this character was the prisoner tried and convicted. When put upon his trial he did not exhaust his right of peremptory challenge; and accepted, according to the usage and practice of our Courts, every juror who passed upon his guilt.
(219) The State, by the solicitor, challenged for cause one of the individuals named on the panel, and assigned as cause for challenge that he was not the owner of slaves; "the prisoner's counsel objected to the legality of the challenge," but it was allowed by the Court. Two of the panel had been previously challenged by the prisoner for the same cause, and the challenge allowed. It is not pretended that the prisoner had not a fair and impartial trial, or that the jury by whom he was tried was not of his choice — accepted by him, and free from all exception.
It is held that the State need not assign cause of challenge, till the panel is gone through; and then the prosecuting officer must show the cause, and if not allowed by the Court, the juror must be sworn. 4 Bl. Com., 353; 2 Hale P. C., 271. This has been the usage of our Courts; and it is in accordance with the practice of the Courts of that country from which our legal notions have been derived. Had the panel been gone through, the prisoner could then have claimed the right to have on his trial the juror who had been challenged by the State; and the prisoner might have had reason for complaint, if the juror were discharged, and the cause assigned did not disqualify him. The prosecuting officer could not at any antecedent stage of the proceedings be required to assign the cause, or the Court to pronounce its decision. The juror was to stand aside, until the panel had been gone through, when the cause of challenge and the decision of the Court could be required.
The prisoner accepted a jury, meeting his approbation and free from all exception, before it was necessary for the prosecuting officer to assign the cause of challenge, or for the Court to decide on its sufficiency. This challenge by the State was in conformity to two challenges, *Page 141 
previously made by the prisoner for the same cause and allowed by the Court. The precedent was established by the prisoner; (220) it was only followed by the State. Very different would have been the aspect of this case, and very different my conclusions, had a juror been imposed on the prisoner of whose qualification there was the least doubt.
The purposes of justice and the end of criminal proceedings are attained when a fair and impartial trial is secured to the accused. The right of challenge is given to prisoners, not that a particular individual may be put on the jury, but that the prisoner may have a jury free from all objection. The prisoner could have arbitrarily and capriciously challenged, without assigning any cause, thirty-five jurors. The circumstance of accepting a jury without exercising to its full extent this right of peremptory challenge shows that the jury was of the prisoner's choice, and free from all exception.
This view of the case dispenses with the necessity of expressing any opinion as to the qualification of the juror. That point does not now require the decision of the Court. And any construction given by me to the act of 1816 (Rev., ch. 912), as to its effect in repealing that part of the act of 1793 (Rev., ch. 381), prescribing the qualifications of jurors for the trial of slaves, would be a mere obiter dictum, and could furnish no rule for the government of future trials. The opinion on this subject, expressed by that eminent jurist and accomplished scholar, the late Chief Justice TAYLOR, in S. v. Jim, 12 N.C. 144, was not the decision of the Court. The question is considered open for adjudication. That opinion is entitled to respect, for the reasons which accompany it; but still more for the judicial reputation and high character of the individual who expressed it; but I wish not to be understood as concurring in it.
I perceive no error in the admission of evidence, or in the Judge's instructions to the jury.