## IVES v. RAILROAD.

(Filed September 25, 1906).

*Statute of Frauds—Growing Trees—Contract for Cord-wood—Challenges to Jurors—Damages for Breach of Contract—Evidence—Acts of Agent—Scope of Employment—Special Instructions.*

1. Growing trees are a part of the realty, and a contract to sell or convey them or any interest in or concerning them must be reduced to writing.

2. A contract, by which the plaintiff agreed to cut for the defendant and deliver along its right-of-way a stipulated number of cords of wood, a part of which was to be cut from the plaintiff's land and the balance from the defendant's land, is not within the statute of frauds.

3. The defendant is not in a position to except to the ruling of the Court sustaining the plaintiff's objection to a juror where it had not exhausted its peremptory challenges, and, so far as appears, the jury chosen to try the case constituted a panel entirely acceptable to both parties.

4. In an action to recover damages for breach of a contract, evidence that plaintiff borrowed money to enable him to fulfill this contract was competent upon the issue as to the plaintiff's ability and readiness to perform his part of the agreement.

5. In an action for damages growing out of defendant's breach of a contract with plaintiff, evidence of what defendant's president and agent, specially deputed to make the contract and to see to its execution, had said and done in course of his employment was competent.

6. If a party desires more definite instructions, he must make a special request for them.

ACTION by B. W. Ives against Atlantic and North Carolina Railroad Company, heard by *Judge B. F. Long* at the May Term, 1906, of the Superior Court of CRAVEN.

The action was brought to recover damages for breach of an oral contract between the parties by which the plaintiff

agreed to cut for the defendant and deliver along its right-of-way fifteen thousand cords of wood, three thousand cords of which were to be cut from the plaintiff's land and the balance from the land of the defendant. For the three thousand cords the defendant agreed to pay $2 per cord and for the remainder $1.75 per cord; the defendant, as to the latter, being allowed a deduction on the price of twenty-five cents per cord for what is called "stumpage," that is, for the trees furnished by it or cut on its land. Plaintiff cut 5,090 cords, for which he was paid, and he cut and was ready to deliver 5,184 cords, and has cut and delivered 748 cords, for which he was not paid, making 10,986 cords, and leaving uncut 4,014 cords. There were 1,140 of the 5,090 cords which were not delivered on the right-of-way, because it was already full of other wood and there was no room for it. This was hauled by plaintiff to his tramway and was ready for delivery, when defendant directed that it should be inspected and paid for. Six hundred cords of it was afterwards delivered on the right-of-way. The plaintiff alleged that he had been prevented from complying fully with his part of the contract by the wrongful acts of the defendant, although he was at all times ready, able and willing to do so; and there was evidence tending to support the allegation. There was evidence tending to show that the plaintiff had not complied in all respects with the contract on his part. It was also in evidence that there had been no breach of the contract by the defendant, until after the road was leased, the former president of the defendant company stating that he would have carried out the contract fully had he been continued in office. The defendant pleaded a counter-claim consisting of $1,193 paid to the plaintiff for the 1,140 cords of wood cut from its land, which it alleged had not been delivered on the right-of-way and which had become worthless, and $285 for stumpage and $413.40 for quarters erected for the plaintiff's hands at his request, making in all $2,691.40; and there was some evidence to sustain the demand.

The plaintiff objected to a juror, N. H. Russell, upon the ground that he was now in the employ of the lessee of the defendant and had formerly been in its employ, the said lessee being responsible under its contract with the defendant for any recovery against the defendant. The objection was sustained, and the defendant excepted. The plaintiff was permitted to prove by one J. A. Meadows, over the defendant's objection, that he had advanced $13,000 to the plaintiff to enable him to carry out this contract, and that the defendant still owed him $7,300 on the debt. This evidence was introduced solely for the purpose of showing that the plaintiff was ready and able to perform his part of the contract. Many other exceptions were taken by the defendant to the rulings and to the charge of the Court, but it is not necessary to make any special reference to them here, as they are noticed in the opinion. The issues, with the answers thereto, were as follows:

"1. Did the defendant contract with the plaintiff, as alleged in the complaint? Ans.: Yes.

"2. Did defendant fail to perform said contract on its part, as alleged in the complaint? Ans.: Yes.

"3. What sum, if any, is the plaintiff entitled to recover of defendant on account of said alleged breach? Ans.: $8,106.90.

"4. Did the plaintiff carry out and perform said contract on his part? Ans.: Yes.

"5. What sum, if any, is the defendant entitled to recover of the plaintiff on account of his failure to perform his contract, as alleged by defendant? Ans.: Nothing."

Judgment was entered upon the verdict, and the defendant appealed.

*D. L. Ward* and *W. W. Clark* for the plaintiff.
*W. C. Munroe, P. M. Pearsall, A. D. Ward* and *O. H. Guion* for the defendant.

WALKER, J., after stating the case: It may now be taken as settled that growing trees are a part of the realty, and a contract to sell or convey them or any interest in or concerning them must be reduced to writing. They are *fructus naturales,* and being rooted in the soil are by nature as much annexed to the freehold as any permanent fixture can be. *Scorell v. Boxall,* 1 Younge & Jervis, 396; *Carrington v. Roots,* 2 M. & W., 254; *Rodwell v. Phillips,* 9 M. & W., 501; *Evans v. Roberts,* 5 B. & C., 829. The course of judicial decision in England upon this subject, from the time of the *dictum* of *Treby, C. J.,* in Anon., 1 Lord Raymond, 182, to the latest period, will be found well stated in Reed on the Statute of Frauds, secs. 707, 711. We have adopted the rule as given in the cases above cited, and a contract for the sale of standing timber has always been considered by us as within the meaning and intent of the statute. *Brittain v. McKay,* 23 N. C., 265; *Mizell v. Burnett,* 49 N. C., 249; *Moring v. Ward,* 50 N. C., 272; *Flynt v. Conrad,* 61 N. C., 190; *Green v. Railroad,* 73 N. C., 524; *Mizzell v. Ruffin,* 118 N. C., 69. The question was directly presented and decided in *Drake v. Howell,* 133 N. C., 162, and *Hawkins v. Lumber Co.,* 139 N. C., 160. But the contract of the parties to this action was not one for the sale of standing trees, but, in the one case, for the sale and delivery of cordwood, and, in the other, for the conversion of trees growing on the defendant's land into cordwood and the delivery of the same on the defendant's right-of-way. It was not contemplated by the parties that there should be a transfer of any title to or interest in the trees as they stood upon the land; and this is essential to bring the agreement within the purview of the statute. 29 Am. and Eng. Enc. (2 Ed.), 880.

In *Washburn v. Burrows,* 1 W. H. & G. (Exch.), 115, *Rolfe, B.,* for the Court, said that where the vendor, who is the owner of the soil, sells what is growing on the land, whether natural produce (*prima vestura*), such as timber,

grass, herbage or apples, or the annual fruits of industry (*fructus industriales*), as corn, pulse, or the like, on the terms that he (the vendor) is to cut or sever them from the land and then deliver them to the purchaser, the latter acquires thereby no interest in the soil, "which in such case is only in the nature of a warehouse for what is to come to him merely as a personal chattel."

It was ruled in the leading case of *Smith v. Surman,* 9 B. & C., 561, that where the owner of land agreed with another to cut timber from his own land and deliver the trees, when cut down or severed from the freehold, to the latter for a stipulated price, the statute did not apply; and the particular agreement, in that case, being construed to have the said effect in law, was therefore held not to be within the statute. And the converse of the proposition is equally true, that where one contracts with another to cut timber from his land and deliver it to him when cut or severed, the statute has no application. It has been so expressly decided. *Killmore v. Howlett,* 48 N. Y.; 569; *Forbes v. Hamilton,* 2 Tyler, 356; *Scales v. Wiley,* 68 Vt., 39; *Green v. Armstrong,* 1 Denio, 550; *Boyce v. Washburn,* 4 Hun., 792; 2 Reed on Statute of Frauds, sec. 711. The courts properly said in the cases cited that to give the statute the construction contended for would be to destroy the right of recovery of almost every laborer at harvesting or mowing, which generally and almost universally rests on a parol contract, and, further, that it would make a writing indispensable to the validity of a contract by the owner of a peat-bed or a sand-bank to deliver even a load from it; and, we may add, it would jeopardize the rights of every woodman who for hire fells trees in the forest. The construction is utterly inadmissible.

It has been said in some cases, following a *dictum* of *Littledale, J.,* in *Smith v. Surman, supra,* that if the trees are sold by the vendor, who is the owner of the land upon which they

are standing, to the vendee, with a stipulation that they must be cut and removed at once, or within a reasonable time, the trees will be regarded as chattels, and the contract will therefore not be within the statute: and this because of the shortness of the time given for cutting and removing them. *Marshall v. Green,* L. R., I. C. P. Div., 35. This distinction is scholastic, if not arbitrary. It partakes more of formalism than it does of sound logic and cogent argument. We would not cite this class of decisions in support of our ruling in this case, as we cannot assent to the reasoning and conclusion of the courts in them. While they may seem to be in point, they really are not, as there the trees themselves, as standing timber, were sold to the vendee. Here they were not. The question as to whether the statute applies should not be determined by the mere accident that time is given to sever the trees or other growth, but by the nature of the thing, as being or not being a part of the freehold. This is the better reason and ground for decision, and it was so considered by *Lord Ellenborough* in *Crosby v. Wadsworth,* 6 East, 602, wherein the Court held an agreement, that the plaintiff should enter the defendants' land and cut and carry away a crop of grass, to be for an interest in land, because "conferring an exclusive right to the vesture of the soil during a limited time"; and to the same effect is *Scorell v. Boxall* and *Killmore v. Howlett,* already cited by us, and numerous other cases decided by courts of high authority. 28 A. and E. Enc. (2 Ed.), 540, and note 6 ; 29 *ibid.,* 889, and note 5, where the authorities are collected. At any rate, the cases which hold that as the time fixed for cutting and removal shows whether or not it was intended that the trees or other growth should receive further nutrition from the soil, it should control in the decision of the question, are at variance with the reason assigned by this Court for its ruling that contracts for the sale of standing trees are within the statute. What is the law, in this respect,

with regard to the fruits of industry (*fructus industriales*), is not now before us. *Flynt v. Conrad, supra.* Our opinion is therefore against what appears to be the main contention of the defendant, that the contract is void because it was not in writing; for this is a contract not for the sale of trees, but merely for the cutting of them into cordwood. It is simply a contract for employment and not for any interest in the article upon which the labor is to be bestowed. This is the practical view and accords with the intention of the parties.

The defendant is not in a position to except to the ruling of the Court sustaining the objection to the juror. It had not exhausted its peremptory challenges, and, so far as appears, the jury chosen to try the case constituted a panel entirely acceptable to both parties. The purposes of justice and the ends of the law are equally attained when a fair and impartial trial has been secured to the complaining party. The right of challenge confers not a right to select, but a right only to reject. This is so in theory and it should be so in practice. *State v. Gooch,* 94 N. C., 987; *State v. Hensley,* 94 N. C., 1021; *State v. Jones,* 97 N. C., 469; *State v. Freeman,* 100 N. C., 429; *State v. Pritchett,* 106 N. C., 667; *State v. Brogden,* 111 N. C., 656; *State v. McDowell,* 123 N. C., 764. If an unobjectionable jury was secured, how does it concern the defendant that a juror was improperly rejected, if such was the case, which we need not decide? The question in the form here presented was decided against the defendant's contention in *State v. Arthur,* 13 N. C., 217.

The testimony of the witness J. A. Meadows was competent and also relevant to the issues being tried. The fact that he loaned the plaintiff money to enable him to fulfill his contract was surely some evidence bearing upon the issue as to the plaintiff's ability and readiness to perform his part of the agreement. Some of this money he had already used and a balance of $7,300 still remained with which he expected to

complete the work. We are at a loss to know why this testi-
mony was not relevant. The fact, if it be one, that its effect
would be to make Meadows the real plaintiff, is not any legal
objection to it.

The defendant objected to evidence of the conversation be-
tween plaintiff, Bryan and Carlyle, as to the delivery of the
1,140 cords, in which Bryan agreed that he need not deliver
it on the right-of-way and ordered that it should be paid for
as it then stood. This is not the declaration, after the fact,
of an agent, but merely the relation of what Bryan, as chief
executive officer of the defendant—that is, its president, and,
too, its agent, specially deputed to make the contract and to
see to its proper execution—had said and done in the course
of his employment. It was a part of the very transaction
involved in this dispute, and a statement made by Bryan
while acting for the defendant, and *dum fervet opus. Smith
v. Railroad,* 68 N. C., 107, and the other like cases do not
therefore apply.

The defendant's counsel further contend that as the plain-
tiff had delivered only 600 of the 1,140 cords on the right-of-
way, leaving 540 undelivered, and as he had delivered only
one other lot of 748 cords (exclusive of the 5,090 cords),
making 1,348 cords so delivered, and as the defendant paid
for 1,140 cords, the plaintiff is entitled to recover only the
difference, or the value of 248 cords. The Court charged the
jury fully with reference to this matter, and told them that
the value of the 248 cords was the measure of the plaintiff's
recovery, "if they should find the facts to be according to the
defendant's contention."

The Court, we think, went to the extreme limit in favor of
the defendant. The defendant's prayer excluded entirely
from the consideration of the jury the evidence introduced by
the plaintiff to show that the defendant had waived a delivery
on the right-of-way and that it had in several respects delib-

erately .broken the contract. The jury have found as a fact from the evidence that there was no valid reason for refusing to receive the entire lot of wood and providing a proper place for its storage.

We were told on the argument, and it is so stated in one of the briefs, though it does not appear in the record, that after the lease was made the defendant no longer needed the wood, as the engines were changed from wood to coal burners. This, if it be true, was of course no excuse for the breach, nor does it clearly appear that there was any other good reason for refusing to receive the wood or for breaking the contract in any other respect, the former president of the defendant company having testified that the wood would have been accepted and paid for and the contract carried out if he had continued in office, and the jury having adopted the plaintiff's version of the facts. We refer to these matters to show that in submitting the case to the jury, the Court has given the defendant the benefit of every possible contention in respect to them, and this is true with reference to all the questions involved.

The other exceptions of the defendant are numerous, but they are not of such a nature as to require any extended discussion of them. They relate, in one form or another, to the refusal of the Court to give more explicit instructions and to explain the relative rights and obligations of the parties under the contract. It has been so repeatedly held by this Court, that if a party desires more definite instructions he must make a special request for them, that the citation of authority to support the rule is hardly required. *Simmons v. Davenport,* 140 N. C., 407. But it must not be inferred that we think the criticism of the charge is warranted, for we are not of that opinion. The instructions were clear and comprehensive, embracing every possible phase of the case which was material and should have been submitted to the jury.

We do not doubt that the jury, which the parties appear to have regarded as fair and intelligent, got a perfect understanding of the facts and the law as explained by his Honor.

We have discussed the exceptions chiefly relied on in the argument before us. The others are, we think, without merit. The case has been fairly and correctly tried and the defendant must abide by the result.

No Error.