Childers v. Coleman.

E. J. CHILDERS *v.* WM. H. COLEMAN COMPANY *et al.**

*(Jackson.* April Term, 1909.)

1. **REMOVAL OF CLOUD UPON TITLE.** Landowner may ques-
   tion the making of extension of timber contract made by his
   vendor, when.

   The purchaser of land filing a bill in chancery to obtain a decree
   declaring the title and possession of land to be in him as against
   the defendants claiming all the white oak timber thereon under
   a sale thereof and extension of time for the removal of the
   timber, made by complainant's vendor, without notice to com-
   plainant, actual or constructive, may question the making of
   the extension, and its validity, because it vitally affects the
   title to his land. (*Post, pp.* 121, 122.)

   Case cited, approved, and distinguished: Iron Co. v. Iron Co.,
   11 Heisk., 434.

2. **REGISTRATION.** Unacknowledged instrument is not entitled
   to registration.

   The assignment of the sale and conveyance of all the white oak
   timber on certain land, when not acknowledged, is not entitled
   to registration. (*Post, p.* 122.)

3. **SAME.** Omission of words "for the purposes therein con-
   tained" in certificate of acknowledgment is fatal to its regis-
   tration.

   The omission, in the certificate of acknowledgment of an instru-
   ment, of the words "for the purposes therein contained," the
   concluding clause in the prescribed statutory form of acknowl-
   edgment, is fatal to the registration of the instrument. (*Post,
   pp.* 122, 126.)

---

*As to oral contract for sale of timber, see note to Hirth v.
Graham (Ohio), 19 L. R. A., 721.

Childers v. Coleman.

Cases cited and approved: Ellett v. Richardson, 9 Bax., 295; Currie v. Kerr, 11 Lea, 138; McGuire v. Gallagher, 95 Tenn., 355; Hughes v. Powers, 99 Tenn., 485.

4. **SAME.** Assignment of sale of growing trees and extension of time for removal must be registered.

Instruments assigning a contract for the sale of growing trees and an extension of the time limit for the removal thereof transfer an interest in land, and are required to be registered. (*Post, pp.* 122, 123.)

Case cited and approved: Ives v. Railroad, 142 N. C., 131.

5. **STATUTE OF FRAUDS.** Sale of growing timber must be in writing.

Growing trees are a part of the realty, and consequently a sale thereof must be evidenced by a writing. (*Post, pp.* 123-126.)

Case cited and approved: Ives v. Railroad, 142 N. C., 131, and 9 Am. & Eng. Am. Cases, 188, and note.

Cases cited and distinguished: Iron Co. v. Iron Co., 11 Heisk., 441; Knox v. Haralson, 2 Tenn. Chy., 232; Dorris v. King (Tenn. Chy. App.), 54 S. W., 683.

6. **SAME.** Leases for more than one year, to be good, must be in writing.

A conveyance extending the time to remove growing timber, even if it be considered as a lease, is within the statute of frauds, and so, to be good for more than one year, it must be in writing. (*Post, p.* 126.)

7. **SAME.** License to enter land must be in writing.

A conveyance extending the time to remove growing timber, even if it be viewed as creating an irrevocable license to enter, is in the nature of an easement, and must be in writing. (*Post, p.* 126.)

Case cited and approved: Nunnelly v. Iron Co., 94 Tenn., 397.

8. **REGISTRATION.** Without acknowledgment or with fatally defective certificate is not constructive notice.

The registration of an instrument, either without acknowledgment or with a fatally defective certificate of acknowledgment,

Childers v. Coleman.

so that in either case it is not entitled to registration, is not constructive notice. (*Post, pp.* 113, 114, 126.)

**9  INNOCENT PURCHASER.** Without notice, actual or constructive, of prior incumbrances or equities will be protected.

An innocent purchaser of land, for value, without notice, actual or constructive, of any prior incumbrances or equities, is entitled to a decree for the land as against claimants of such priorities. (*Post, p.* 126.)

---

## FROM HARDEMAN.

---

Appeal from the Chancery Court of Hardeman County.—E. L. BULLOCK, Chancellor.

J. A. FOSTER, ISAAC ORME, and BEN CHILDERS, for complainant.

C. A. MILLER and C. G. BOND, for defendants.

---

MR. JUSTICE MCALISTER delivered the opinion of the Court.

Complainant filed this bill, alleging his ownership in fee of a tract of land in Hardeman county comprising three hundred acres, and that the defendants Wm. H. Coleman and J. M. and F. L. Marshall had entered upon said land and were committing waste by cutting and removing timber. Defendants answered the bill, averring that on March 7, 1904, and prior to complainant's purchase of said land, its then owner, J. S. Neely,

sold and conveyed to one W. E. Small all of the white oak timber on said land, and that on July 12, 1906, the said W. E. Small, for value received, assigned all of his rights and title to said timber contract to the William H. Coleman Company without recourse.

It is averred in the answer that under the original contract the said W. E. Small was allowed three years from the date of said contract to cut and remove said timber, and that thereafter J. S. Neely, the vendor, extended the time for the removal of said timber for a period of two years from July 12, 1906. Hence it is seen that the defense interposed on behalf of defendants is that the William H. Coleman Company had acquired title to the white oak timber on said tract of land by assignment of a contract made with J. L. Neely, the vendor of complainant, some time prior to the sale of said land by the said Neely to complainant, Childers.

On the coming in of the answers, complainant filed an amended bill, alleging:

"That on the 3d of October, 1907, J. S. Neely and wife, E. A. Neely, were in the actual possession of the lands described in the original bill, and represented to him that said land was unincumbered; that he paid to them $800 the cash consideration, and executed his two promissory notes, due in one and two years, for $800 each, and delivered the same to J. S. Neely and wife, and prior to that time complainant had no notice, actual or constructive, of any alleged claim of defendants; that, when he purchased said land, defendants were

Childers v. Coleman.

not in possession, and so far as complainant knew, were not claiming any right to enter upon said land; and he states on information and belief that defendants had never been in actual possession of said land or the timber, had never cut or removed, and had never attempted to cut or remove, any white oak or other timber from said land up-to and for some time after complainants had purchased said land."

Complainant further states as follows:

"He was put in possession of the land by said J. S. Neely on the 3d of October, 1907, and knew nothing of the claim of defendants until after he filed his original bill; that he is an innocent purchaser for value, and had no notice of the sale or transfer of the white oak timber then standing on said land, and that he paid a valuable consideration for the same; that defendants had entered upon said lands, without the knowledge of complainant or his consent, cut and removed and wasted valuable timber, and otherwise damaged complainant to the extent of $300."

It is further charged in the amended bill:

"That the instruments purporting to be deeds of conveyance under which defendants claim a superior title were neither actual nor constructive notice to complainants, for the reason that said assignment did not describe the land, and the instrument purporting to extend the time limit, contained in the original contract for the removal of the timber, was obtained through fraud, and was not properly acknowledged, and the cer-

tificate of the notary was not in compliance with the statute."

It was therefore charged that said instruments were not entitled to registration and that no notice was thereby conveyed to complainant.

The prayer of the amended bill is that complainant be declared an innocent purchaser for value without notice, and that he be decreed the title and possession of said land, etc.

Proof was taken, and on the hearing the chancellor, Hon. E. L. Bullock, presiding, decreed that the title of complainant to the land and timber was superior to any claim of the defendants, and that the conveyances under which defendants claimed title constituted a cloud on complainant's title. The chancellor made perpetual the injunction restraining the defendants from cutting and removing timber or otherwise committing waste, and pronounced a decree in favor of complainant for the value of timber already cut, and the damages accruing by reason of said waste, and ordered a reference to the master to take proof and report the amount of said damages. At the March term, 1909, the chancellor rendered a judgment in favor of complainant against the defendants for the sum of $150 for the trees cut and removed by the defendants, and the further sum of $9 as damages caused to the small timber by reason of the trees cut falling against and injuring same. The W. H. Coleman Company appealed from all of said decrees and has assigned errors.

The first assignment is as follows:

"The chancellor erred in decreeing that the title of complainant, E. J. Childers, is superior to the claim of defendants in and to the land and timber described in the pleadings, and that the claim of the defendants to the white oak timber on said lands is not valid, but constitutes a cloud on complainant's title, because the proof in the record shows that the contract under which the Wm. H. Coleman Company claimed ownership and title to the white oak timber was prior in time, and therefore superior in right, to any claim or title that complainant, E. J. Childers, had to said white oak timber. J. S. Neely, from whom both complainant, E. J. Childers, and the defendant Wm. Coleman Company claim title, conveyed and transferred all of the white oak timber on the three hundred acres of land described in the pleadings to W. E. Small, by contract dated March 7, 1904; that on July 12, 1906, he extended the time for the cutting of the white oak timber on the lands sold to Small, and later sold to W. H. Coleman Company, to two years from date."

The second assignment of error will be considered in this connection, and is as follows:

"Second. The chancellor erred in making the injunction perpetual. The weight of the proof is that the appellee had notice of the timber contract of J. S. Neely with appellant at the time that he bought the land. The rule 'caveat emptor' applies to him."

The facts established by the record are that in Oc-

tober, 1907, complainant, Childers, who resided at Pulaski in Giles county, purchased this land, lying in Hardeman county, through a resident agent, one Camody. At the time of the sale Mr. Isaac Orme represented the vendor, J. S. Neely and wife. An abstract of title to the land was prepared at the instance of the vendor and sent to Mr. Childers at Pulaski; and, the title having been pronounced perfect by the abstracter, Mr. Childers accepted the deed and made a cash payment of $800, executing his notes for the two deferred payments of $800 each. · The deed was executed on the 3d of October, 1907, and Mr. Childers was immediately put in possession of the land. The complainant had no actual or constructive knowledge, at the time he purchased the land, that the defendant W. H. Coleman Company claimed any right, title, or interest in the white oak timber on said land. It also appears that, at the time Childers was put in possession, no agent or employee of the defendant W. H. Coleman Company was in possession of said land nor did the complainant become apprised of any trespass on said land until after the lapse of about two weeks, when some of the defendant's agents went upon said land and began to cut and remove timber; the number of trees cut not exceeding 13. Thereupon complainant filed the present bill, asserting his title in fee to the land, and seeking to restrain the defendants against trespassing and committing waste.

As already stated, the defendant Coleman relied on

a contract assigned to that company by W. E. Small, July 12, 1906. The contract is as follows:

"For and in consideration of $400 to me in hand paid, I (or we) hereby sell and convey to W. E. Small, or assigns, all of the white oak timber on my land situated in Hardeman county, State of Tennessee, district No. 11, bounded as follows: On the east by Trim, on the north by Mills, on the west by Rogers and Mills, and on the south by Campbell—containing about 300 acres. Said land known as the —— place, and lies —— miles of ——. Said Small shall have three years from this date to work same, and shall have right of way to land and timber, with men and teams, to cut and remove same at his pleasure. There is no incumbrance or claim on said land that will interfere with said Small working said timber.

"Signed at Pocahontas, Tenn., this 7th of March, 1904.    [Signed]                    .J. S. NEELY.
"Witnesses:

"B. D. IRBY.

"G. L. PARIS."

It will be noticed this instrument was not acknowledged, and expired by limitation on March 7, 1907, seven months before the conveyance to Childers. On the back of this instrument, is the following indorsement:

"July 12, 1906.

"For value received, I assign all of my rights and title to the within timber contract to Wm. Coleman Co., without recourse.          "W. E. SMALL."

It appears that on July 12, 1906, the day on which this assignment was executed, J. M. Marshall, as agent for Wm. Coleman Company, went to Dr. Neely to procure an extension of the time limit of three years contained in the original contract. Dr. Neely testified that Marshall stated to him:

"That he would like to get an extension of the time for cutting the timber, provided he could buy the contract from Small. I told him, if he could arrange to get Small's contract, that I would give him one year's time from that date, and he wrote out an agreement, as I supposed, in keeping with our conversation to that effect, and, being busy at the time, I did not take time to read it, but signed it, and he went away."

It appears that one year's extension of the time limit of three years, contained in the original contract, would have extended the time for cutting the timber until July 12, 1907, or three months before the date of the deed to Childers, which was executed by Dr. Neely, as already stated, October 3, 1907.

It appears, however, that on April 23, 1907, Marshall, accompanied by M. Wilson, a notary public, returned to Dr. Neely with the contract, which had already been signed by Dr. Neely, for an extension of the time, for the purpose of having the instrument acknowledged. The instrument produced, instead of extending the time for one year, extended it to two years from date, and was as follows:

"Pocahontas, 7—12—1906.

"This is to certify that I have extended the time for cutting the white oak timber on my lands, sold to W. E. Small, and later transferred to W. H. Coleman Company, to two years from date.

"J. S. NEELY."

Dr. Neely declined to execute this instrument, although he had previously signed it, for the reason that it contained an extension of the time limit to two years, instead of one year, as he had agreed, and which he supposed had been properly inserted in the contract. Several witnesses, who were present, testify that Dr. Neely refused to acknowledge this instrument on the ground that it did not embody his agreement with Mr. Marshall. This fact is admitted by Mr. Marshall himself, as well as by Mr. Wilson, the notary public, who was present.

But, despite the fact that Dr. Neely had repudiated the instrument and refused to acknowledge it, Marshall procured the notary public to attach his notarial certificate, certifying to the acknowledgment. The form of the certificate, however, was in the following language:

"*State of Tennessee, Hardeman County*:

"Personally appeared before me, M. Wilson, a notary public in and for said county and State, the within named J. S. Neely, the bargainor, with whom I am personally acquainted, and who acknowledged that he executed the within instrument.

"Witness my hand and official seal at Middleton, Tenn., this 23d day of April, 1907.

"M. WILSON, Notary Public."

It will be observed that the words "for the purposes" therein contained," required by the statutory form of certificate, are omitted, and this fact is explained by the notary, who testifies that he marked out these words for the reason that Dr. Neely had never acknowledged the instrument for the purposes therein contained.

It will be further noticed that this instrument of extension contains no description of the land, and the proof is that at the time it was signed by Dr. Neely it was on a separate slip of paper, and not attached to the original contract for the sale of the white oak timber by Dr. Neely to W. E. Small. · It is also in proof that, at the time this alleged extension was acknowledged, the original conveyance to Small of the white oak timber had not been assigned by Small to Wm. Coleman Company and none of these papers had been offered for registration. It appears, however, that afterwards these separate papers were pasted together, and, together with the notarial certificate of acknowledgment, were recorded in the register's office of Hardeman county.

Counsel for appellee, in answer to the two assignments of error already stated, says:

"(1)   The alleged extension of two years was never in fact executed by Dr. Neely, and there was no consideration for it.

"(2)   Both the assignments of Small to Coleman Company and the alleged extension of time are void under the statute of frauds.

"(3)   All three of the instruments relied on by the defendants are lacking in any proper words of conveyance, and are insufficient and void as conveyances.

"(4)   All of said instruments are insufficient under the laws relating to the acknowledgment of instruments of conveyances; none of them having a sufficient certificate of acknowledgment.

"(5)   Said instruments were not entitled to registration and could not constitute constructive notice to Childers.

"(6)   E. J. Childers was an innocent purchaser for value and without notice, either constructive or actual, of any of the instruments relied on by the defendants."

It has already been seen that the conveyance of the white oak timber from J. S. Neely to W. E. Small, dated March 7, 1904, and under which the William Coleman Company claims by assignment, provides on its face a three-year limit for the removal of the timber, and this time limit expired March 7, 1907, six months prior to the conveyance of the land by J. S. Neely to complainant, Childers, on October 3, 1907; but the defendant Coleman Company relies on an extension of two years to the original time limit, granted by J. S. Neely, July 12, 1906, which contention, if established, would carry the time limit for the removal of the timber beyond the time of the purchase of the land by complainant,

Childers. As a matter of fact, we are satisfied from an examination of the record that no such extension was granted by J. S. Neely. While there is some evidence to the contrary, the great preponderance of the evidence overthrows this contention. We think there is no doubt of the right of Childers to make this question in the present controversy, since it vitally affects his title to the property. In *Iron Co.* v. *Iron Co.,* 58 Tenn., 434, this question was reserved upon the ground that the purchaser of the property had notice, but in the present case, as we shall see, the purchaser had no notice of the prior incumbrance, actual or constructive. The assignment from W. E. Small to Wm. Coleman Company was not acknowledged at all, and was not, therefore, entitled to registration. It has already been observed that in the notarial certificate to the alleged "extension of time" conveyance, the phrase "for the purposes therein contained" is entirely omitted. This was purposely done, as we have seen from the evidence of the notary already quoted.

It has frequently been held by this court that the omission of this language from the certificate of the notary is fatal to the registration of the instrument. *Currie* v. *Kerr,* 79 Tenn., 138; *Hughes* v. *Powers,* 99 Tenn., 485, 42 S. W., 1; *McGuire* v. *Gallagher,* 95 Tenn., 355, 32 S. W., 209; *Ellett* v. *Richardson & Co.,* 68 Tenn., 295.

These instruments, providing for the assignment of a contract for the sale of growing trees and an exten-

sion of the time limit for the removal thereof, trans-ferred an interest in land, and under our statutes were required to be registered.

In *Ives* v. *Atlantic, etc., R. R. Co.*, 142 N. C., 131, 55 S. E., 74, 115 Am. St. Rep., 732, it is said:

"It may now be taken as settled that growing trees are a part of the realty and a contract to sell or convey them, or any interest in or concerning them, must be reduced to writing. They are *'fructus naturales,'* and, being rooted in the soil, are by nature as much annexed to the freehold as any permanent fixture can be"—citing authorities.

This case is reported in 9 Am. and Eng. Ann. Cases, followed by an elaborate note of the editor, in which all the cases are collected, and the result was stated to be that the rule laid down in the reported case, to the effect that growing trees are a part of the realty, and that consequently a contract for the sale of standing timber is within the meaning and intent of the statute of frauds, and must be evidenced by a writing, has the support of the decided weight of authority. This question was considered by Judge Cooper in the case of *Knox* v. *Haralson*, 2 Tenn. Ch., 232, wherein it was held that a sale of so many cords of wood now standing in the tree is within the statute of frauds and must be in writing.

An exception to the general rule is found in the case of *Iron Co.* v. *Iron Co.*, 58 Tenn., 441, where it appeared the contract was for a sale of timber at ten cents per

cord, to be paid for as fast as used. The court held that this was a sale of personalty, for the reason:

"The property did not pass in the timber until it should be used or received by the purchaser—at any rate, not until cut and corded up, as it was to be paid for by the cord, as used."

In the case of *Dorris* v. *King* (Tenn. Ch. App.), 54 S. W., 683, there was a contract for the delivery of timber by the vendor at the mill, already cut, and, following the case of *Iron Co.* v. *Iron Co.*, supra, the court of chancery appeals properly held the contract was not within the statute of frauds. In the note to *Ives* v. *Atlantic, etc., R. R. Co.*, 9 Am. & Eng. Ann. Cas., 188, the editor, in speaking of this exception to the general rule, says:

"In several jurisdictions, which recognize the general rule, it has been held that there may be a valid parol contract for the sale of timber as a chattel, where it is to be cut and delivered by the vendor, although it is designated as standing upon certain lands, since in such case the contract does not contemplate that the vendee shall have any property in the trees until after they have been actually cut down and removed."

And citing, among other cases, *Dorris* v. *King*, supra, and *Iron Co.* v. *Iron Co.*, supra, the editor further states:

"That such a contract is not a contract for the sale of trees in their standing condition, but rather a contract whereby the vendor agrees to bestow work and

Childers v. Coleman.

labor upon his own material, and deliver it in its changed condition to the plaintiff."

In Tiffany on Real Property, secs. 228, it is said:

"A sale of growing trees, or of other growths of a semipermanent character, such as grass or fruit growing on trees, is, by the weight of authority, *prima facie* a sale of an interest in land, and consequently it must be in writing under the fourth section of the statute of frauds; and so it has been held that a mortgage or sale of standing timber must comply with the same requirements as if it were of the land itself. If, however, the title is not to pass until the products have been severed from the soil, as when one contracts to sell lumber to be cut, the contract is for the sale of goods."

In Beach on Contracts, sec. 540, the rule is thus stated:

"Contracts for the sale of grass and growing trees have been held to concern an interest in land. The word 'land,' in its legal signification, embraces more than the word literally imports. It is a comprehensive term, and includes standing trees, buildings, fences, stones, and waters, as well as the earth, and all pass under the general description of land in a deed. Standing trees pass to the heir as a part of the inheritance, and not to the executor as emblements or chattels. For this reason it has been usually held that a sale of growing trees, with a right at any future time, whether fixed or indefinite to enter upon the land and remove them, conveys an interest in the land; but, when severed from

the freehold, it is settled learning that they become chattels."

It may be observed that, if the conveyance extending the time be considered as a lease, it would be within the statute of frauds, and good for only one year. So, if it be viewed as creating an irrevocable license to enter, this is in the nature of an easement, and must be in writing. *Nunnelly* v. *Iron Co.*, 94 Tenn., 397, 29 S. W., 361, 28 L. R. A., 421.

It follows, therefore, that, since these conveyances transferred an interest in realty, they were required to be registered; but since there was no acknowledgment at all to one of the instruments, and a fatally defective notarial certificate to the other, neither was entitled to registration, and therefore such a registration would not fix constructive notice on any one dealing with said property. The record also shows that complainant, Childers, had no actual notice of the original contract between Neely and Small, or of its assignment to the William Coleman Company, or of the alleged extension of the time limit. We are satisfied that Childers was an innocent purchaser for value of this property, without notice, actual or constructive, of any prior incumbrances or equities, and that he is entitled to a decree for this land, and for damages for the unlawful cutting of his timber. The decree of the chancellor will be in all respects affirmed.