GRANVILLE LUMBER CO. v. ATKINSON.

(District Court, E. D. North Carolina. July 25, 1916.)

No. 376.

1. LOGS AND LOGGING &⪪3(14)—SALES AND CONVEYANCES—DEED OF TIMBER.
    In North Carolina a deed conveying timber trees, containing a fixed period within which the grantee shall cut and remove timber, operates as a conveyance of the timber, or an estate in the timber, upon condition that, if it be not cut and removed within the given time, the interest or estate so conveyed shall revest or revert to the grantor.
    [Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. § 11; Dec. Dig. &⪪3(14).]

&⪪For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. VENDOR AND PURCHASER ☞239(5)—PAROL RESERVATION OF TIMBER—BONA FIDE PURCHASERS.

A parol reservation of timber, made by grantors of timber lands when they conveyed, is invalid as against the purchaser for value and without notice from their grantee.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 590; Dec. Dig. ☞239(5).]

3. VENDOR AND PURCHASER ☞228(1)—RESERVATION—NOTICE.

No notice, other than the reservation of timber in the duly registered deed to timber lands, could affect a remote grantee's right to the timber, which was not cut and removed within the time fixed by the owner's former deed of the timber.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 495, 496; Dec. Dig. ☞228(1).]

4. LOGS AND LOGGING ☞3(14)—SALES AND CONVEYANCES—CONSTRUCTION OF DEED.

Where the owners of timber lands conveyed the timber to a lumber company, to be cut and removed from the land at any time within 12 years, the deed providing for an extension of time for 5 years upon payment of $20 each year, the legal effect of the deed was to vest in the lumber company title to the timber to be cut within 12 years, title to so much as remained on the land at the expiration of that time reverting to or revesting in the grantors or their assigns, with the right in the lumber company to have an extension on the terms of the deed.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. § 11; Dec. Dig. ☞3(14).]

5. LOGS AND LOGGING ☞2—SALES AND CONVEYANCES—SUCCESSION IN RIGHTS.

Deed to timber lands from parties who had previously granted the timber vested in the grantees of the lands the right and title in respect to the timber which the grantors had relative to a reversion upon failure to remove the timber within 12 years.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 1-5; Dec. Dig. ☞2.]

6. LOGS AND LOGGING ☞3(11)—SALES AND CONVEYANCES—EXERCISE OF OPTION FOR EXTENSION—TIME.

Where timber was conveyed, to be removed within 12 years, the grantees by the deed receiving a right to extend the time for 5 years by the payment of $20 yearly, the right to demand an extension, or to extend the title, with the privilege of cutting and removing, after the expiration of 12 years, was dependent on the tender by the grantee's successor in title to the grantors or their successors of the amount stipulated to be paid on or before the last day of the period.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. § 9; Dec. Dig. ☞3(11).]

7. LOGS AND LOGGING ☞3(11)—SALES AND CONVEYANCES—EQUITY.

When the terms of a contract for the sale of standing timber with time limit for cutting and removing are plain, a court of equity should not interfere with the contractual rights and obligations assumed by the parties.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. § 9; Dec. Dig. ☞3(11).]

In Equity. Suit by the Granville Lumber Company against A. D. Atkinson. Bill dismissed.

R. N. Simms, of Raleigh, N. C., T. Lanier, of Oxford, N. C., and H. G. Connor, Jr., of Wilson, N. C., for complainant.

James H. Pou, of Raleigh, N. C., for defendant.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

CONNOR, District Judge. Complainant is a Delaware corporation. Defendant is a citizen and resident of Johnston county, in the Eastern district of North Carolina. From the pleadings and proofs it appears that, prior to November 10, 1903, Monroe Bullock and his wife, Mattie, executed a deed, conveying, in consideration of two hundred dollars, to the Lucas Lumber Company, Incorporated, all of the standing and growing timber, of the dimensions named, on a tract of land situate in Johnston county, containing 57 acres, being the separate property of the said Mattie Bullock. The Lucas Lumber Company, or its assigns, were given the right to cut and remove the timber from the land, at any time within 12 years from the date of the deed. It was further provided that:

"If the said Lucas Lumber Company, or its assigns, do not enter upon said lands, or cut or remove said timber within the time above specified, then and in that event, if the said Lucas Lumber Company shall pay to the parties of the first part, their heirs or assigns, interest on the purchase money in advance, at the rate of 10 per cent. per annum, that the said time shall be extended for, and during, the period of 5 years thereafter."

This deed was registered in the office of the register of deeds of Johnston county November 12, 1903. Thereafter the Lucas Lumber Company conveyed the timber, with all rights as to time of cutting and extension thereof, to the Lucas Company. On the 14th day of August, 1909, the Lucas Company conveyed to the complainant, Granville Lumber Company, the same timber, together with all of the rights and privileges conveyed in said deed. This deed was registered in the registry of Johnston county January 31, 1910. On the 14th day of August, 1908, the said Monroe Bullock and wife conveyed the tract of land on which timber was standing to J. G. Raper and H. G. Whitehead. The consideration upon which this deed was made was the release of a debt, and cash, aggregating $550. It was recorded in the registry of Johnston county, on August 20, 1908. Whitehead later conveyed his interest in said land to Raper. On May 27, 1911, J. G. Raper, conveyed the same land to defendant, A. D. Atkinson, in consideration of $400. This deed was recorded in the registry of Johnston county, on June 5, 1911. At the date, November 10, 1915, upon which the right to cut and remove the timber expired, complainant had not entered upon said land, or cut or removed any part of timber. There was no settlement or clearing on the land, being entirely covered by the timber trees. Neither of the deeds conveying the land contain any reference to the sale of the timber or reservation thereof.

So far as material to the decision of the questions raised by the pleadings, I find the following facts, other than the record evidence: Mr. T. Lanier, residing at Oxford, N. C., was the regular attorney for the plaintiff company, and as such attorney was intrusted with the duty of looking after, and securing, extension of time for cutting and removing timber on the several tracts of land, to which the company held deeds or contracts. He was provided with the money necessary to pay for such extension. During the month of October, 1915, he went to Smithfield, Johnston county, where Bullock at one

time resided, for the purpose of paying the interest, and securing the extension of the time for cutting the timber on the land in controversy. He knew that the period fixed in the deed expired during the month of November, 1915. He made inquiry of the sheriff, clerk of the court, register of deeds, and others in regard to the residence of Monroe Bullock. They were unable to give him the information, telling him that Bullock had moved to Wilson county, but that they did not know where he was. Thereupon Mr. Lanier advised Mr. Clark, the principal stockholder of plaintiff company, that he was unable to find Bullock, and "he had better have the matter attended to." Mr. Lanier was prepared to pay the interest required to secure the extension when he went to Smithfield.

Some time after November 10, 1915, Mr. Markham, with whom plaintiff had a contract for cutting the timber, entered upon the land for the purpose of placing a mill thereon, to cut the timber. Defendant forbade him from proceeding to place the mill, or cut or remove the timber. He notified Clark of the action of defendant. During the month, and near the middle of February, 1916, Clark, representing the plaintiff company, went to see defendant and offered to pay him the interest, $20, the amount named in the deed, which defendant refused to accept, whereupon he offered to pay defendant $100 for the purpose of securing the extension, which defendant also refused to accept. He then offered to pay defendant $1,000 for the extension, which he also refused to accept. This last offer Clark made, not as the representative of the plaintiff, but on his personal account, saying to defendant that he wished to avoid litigation. Clark inquired of defendant in regard to the residence of Monroe Bullock and was told that he did not know where Bullock lived, but understood that he lived somewhere in Wilson county. This statement was true. At the request of Clark, defendant showed him his deed for the land. A short time thereafter, and about the middle of February, 1916, Mr. Clark and Mr. Lanier, together, went to Bullock's residence in Wilson county, and paid to him the sum of $20, taking from him and his wife a receipt in the following words and figures:

"Received of the Granville Lumber Company twenty and oo/xx Dollars for extension on a certain tract of timber in Wilder's township, Johnston county, on land joining the lands of Ruffin Carroll, and others, and being lot No. 6 in the division of the lands of Henry H. Anderson, same being the timber sold to Lucas Lumber Company by deed dated November 10, 1903, and of record in Book L #8, office of register of deeds of Johnston county, at page 597, and containing 57 acres, and purchased by the Granville Lumber Company December 10, 1906. Said Bullock hereby agrees to and ratifies the extension of the time to cut said timber for a period of five years from November 10, 1915, upon the payment of $20.00 per year by said Granville Lumber Company, upon demand upon said company, through their attorney, T. Lanier, of Oxford, N. C.

"Witness my hand and seal this November 5, 1915.

"Monroe Bullock.
"Mattie Bullock."

"Witness: T. Lanier."

The money was paid, and the receipt given by Bullock and wife, about the middle of February, 1916. Bullock, at the suggestion and upon the request of Clark, signed the receipt as of November 5, 1915.

The value of the timber, at the date of the sale to Lucas Lumber Company, was about the amount paid for it. The deed from the Lucas Lumber Company to plaintiff company, conveying the timber in controversy, also conveyed the timber on a number of other tracts of land; the consideration being, for all of the tracts and timber, $30,000.

By reason of the growth of the timber trees, the construction of a railroad near the land, and the condition of the market, the value of the standing timber on the land was, on November 10, 1916, in excess of $3,000. At the hearing plaintiff offered to pay defendant the sum of $100 and demanded that an extension of 5 years be granted to it for cutting and removing the timber, and amended its bill in accordance with such offer. Defendant refused to accept the money or to grant the extension. Plaintiff alleges that, before the time for cutting and removing the timber had expired, Bullock went to see defendant in regard to the extension of time, and that defendant suggested to him that the fact that he had purchased the land be concealed from the owner of the timber, and that the time for cutting would expire on November 10, 1916; that neither of them knew, at that time, to whom the timber had been sold by the Lucas Lumber Company. I am unable to find that there was any suggestion on the part of defendant, or any agreement between Bullock and defendant, to conceal from plaintiff the name of the owner of the land, or that the time fixed in the deed for cutting the timber would expire on November 10, 1915. It is manifest from the evidence that neither Bullock nor defendant knew to whom the timber belonged. It is also manifest that neither of the parties interested knew to whom the interest or amount to be paid for the extension of time for cutting was due or payable. At the time plaintiff paid Bullock and wife the $20 and took their receipt therefor, they were uncertain whether the money for the extension was due to Bullock and wife, or defendant. At the time the tender was made by Clark to defendant, and refused, defendant was unwilling to release such right as he had, or to extend the time for cutting the timber. Neither Bullock nor defendant had, at the time of the tender of the money by Clark, nor the payment by him to Bullock, consulted counsel in regard to their right to the timber, or the money to be paid for extending the time for cutting and removing.

Plaintiff's bill is drawn upon the theory that, conceding that the interest to be paid for the extension at the expiration of period granted for cutting and removing the timber was due and payable to defendant, and that, therefore, the payment to Bullock and wife did not affect defendant's rights, a court of equity will relieve against the forfeiture, and compel defendant to accept the interest and grant the extension.

[1] Since the decision of the Supreme Court of this state in Bunch v. Lumber Co., 134 N. C. 116, 46 S. E. 24, in which the subject was given careful consideration, and the variant views and decisions of other courts discussed by Mr. Justice Walker, it has been uniformly held that a deed conveying timber trees, containing a fixed period within which the grantee should cut and remove them, operates as "a conveyance of the timber, or an interest or estate in the timber, upon condition that, if it is not cut and removed within a given time, the inter-

est or estate so conveyed shall revest in or revert to the grantor." The estate in the timber which vests in the grantee has sometimes been likened to a base or qualified fee. This case has been frequently cited, and uniformly followed, in this state. In Hawkins v. Lumber Co., 139 N. C. 161, 51 S. E. 855, Mr. Justice Hoke, citing with approval the decision in Bunch's Case, supra, says:

"The true construction of this instrument now before the court is that the same conveys a present estate of absolute ownership in the timber, defeasible as to all timber not removed within the time required by the terms of the deed."

And, quoting the language used in Bunch's Case, he says:

"At the expiration of that time the estate in so much of the timber as had not been cut and removed would revert to the vendor, or at least the timber would become his absolute property."

So, in Midyette v. Grubbs, 145 N. C. 85, 58 S. E. 795, 13 L. R. A. (N. S.) 278, Judge Hoke, quoting with approval the language of Judge Walker in Ives v. Railroad, 142 N. C. 131, 55 S. E. 74, 115 Am. St. Rep. 732, 9 Ann. Cas. 188, says:

"It may now be taken as settled that growing trees are a part of the realty, and a contract to sell and convey them, or any interest in or concerning them, must be reduced to writing. These authorities also establish that, on the expiration of the time stated in such a contract within which the timber may be removed, all right in the vendee shall cease and determine, and the estate in so much of the standing timber as has not by that time been severed shall revert to the vendor; and both positions are upheld in numerous and well-considered cases in other jurisdictions."

Following this line of decided cases, we find that, by reason of the expiration of the periods fixed in timber deeds for cutting and removing the timber, and the change of title to the land, the question arose whether the right to receive the price of the extension was in the original owner of the land or the one who owned it at the expiration of the time fixed in the deed for cutting the timber remaining on the land at that time. The court decided in Hornthal v. Howcott, 154 N. C. 228, 70 S. E. 171 (February 22, 1911), that when the owner of land who had sold and conveyed the standing timber, giving 4 years to cut it, afterwards conveyed the land by deed containing a reservation of the timber in these words:

"The pine and poplar timber having been previously sold, to the John L. Roper Lumber Company, and is excepted from this deed"

—the timber which had not been cut and removed, at the expiration of four years, belonged to the grantee.

In Carolina Timber Co. v. Wells (N. C.) 88 S. E. 327, Hoke, J., citing a number of decided cases, says:

"The cases on the subject are to the effect, further, that a stipulation of the kind now presented, providing for an extension of the time within which the timber must be cut, is in the nature of an option, and it is held by the great weight of authority that contracts of this character do not of themselves create any interest in the property, but only amount to an offer to create or convey such an interest when the conditions are performed, and working a forfeiture when not strictly complied with. * * * And from this it follows that when, in one of these timber deeds the time first provided and paid for

has passed and it becomes necessary for the grantee to hold, by reason of the performance of the stipulations for an extension, that the estate or interest arises at the time the conditions are complied with, and in the absence of any conditions in his deed to the contrary the price paid belongs to him who then has the title, and from whose ownership the interest is then created. The extent of the option or privilege obtained, to the extent of the right conferred, is a contract attendant upon the title, and, as stated, unless otherwise specified in the deed conveying the title, the price for the interest arising on proper performance of the conditions will inure to the owner. It is from his estate that the interest passes, and he must receive the purchase price."

So it is held that the heir, and not the administrator, of the grantee of the timber is entitled to the price provided to be paid for an extension of the period fixed for cutting and removing the timber. Carolina Timber Co. v. Bryan, 88 S. E. 329.

[2-5] This was a logical conclusion, drawn from the construction given deeds for standing timber, with a time fixed in the deed for cutting and removing—that they conveyed all the timber which was cut and removed within such period. The law in regard to the right of defendant was declared in Hornthal's Case, four years prior to the expiration of the time allowed plaintiff to cut and remove the timber in controversy. I am not able to find, as suggested by plaintiff, that there was any parol reservation of the timber made by Bullock and wife when they conveyed to Raper and Whitehead. If there had been such reservation, it is clear that, at law, it would have been invalid as against their grantee. If they had an equity to enforce, as against Raper, such as a parol reservation, it could not affect defendant, who purchased the land for value and without notice. No notice, other than the reservation in a deed duly registered, could affect defendant's right to the timber which was not cut and removed within the time fixed by the deed under which plaintiff claims. Burwell v. Chapman, 159 N. C. 209, 74 S. E. 635.

It is clear that the legal effect of the deed by which Bullock and wife conveyed the timber to the Lucas Lumber Company was to vest in the grantee the title to the timber, to be cut within 12 years (that is, by November 10, 1915), and that the title to so much of such timber as remained on the land at that time reverted to, or revested in, Bullock and wife, or their assigns, with the right in the lumber company to pay $20 each year for 5 years, and to demand and have an extension for that period of time to cut and remove the timber. The deed from Bullock and wife to Raper and Whitehead vested in them the right and title, in respect to the timber, which their grantors had, and by their conveyance to defendant the same right and title vested in him. Bullock and wife, by the execution of the deed to Raper, were eliminated from the title and all of the rights and incidents attaching thereto. We may then lay to one side the transaction between plaintiff and Bullock and wife of February, 1916. It follows, therefore, that plaintiff, as the successor in title to the timber of the Lucas Lumber Company, had the right, on November 10, 1915, to tender to defendant $20 and demand an extension of the time for one year for cutting and removing the timber, and this he was entitled to repeat until the expiration of 5 years. Plaintiff failed to do either on the day

fixed by the terms of the deed. The courts uniformly hold that the tender of the interest or amount required to be paid for the extension of time for cutting the timber must be made in strict conformity, in respect to time, with the terms of the contract.

In Davis v. Frazier, 150 N. C. 447, 64 S. E. 200, to the suggestion that the contract should, in respect to time of making the tender, be liberally construed to prevent a forfeiture, Judge Hoke said:

"If it be conceded that the clause in question is a condition subsequent, the position contended for by defendant is well recognized; but it is only a rule of interpretation, and does not obtain, when the meaning of the contract is so plain that no construction is permissible"

—quoting with approval the language of the Court of Appeals of Virginia:

"While courts regard with disfavor conditions and defeasances which are calculated to prevent or defeat the absolute vesting of titles, * * * when the condition or defeasance is clear and explicit, they do not hesitate to give effect to the intention of the parties." Epperson v. Epperson, 108 Va. 471, 62 S. E. 344.

[6, 7] In Bateman v. Lumber Co., 154 N. C. 248, 70 S. E. 474, 34 L. R. A. (N. S.) 615, referring to an extension clause in a timber deed, the same, in all essential respects, as the one with which we are now dealing, it is said:

"The provision in question, conferring as it does a privilege, and unilateral in its obligation, partakes to some extent of the nature of an option, in which time is ordinarily of the essence, and the accepted doctrine in reference to this and other instruments containing the same and similar language is that they should be strictly construed."

See Waterman v. Banks, 144 U. S. 394, 12 Sup. Ct. 646, 36 L. Ed. 479, in which the distinction between a bilateral contract, in which both parties are bound, and the vendor may compel the vendee to pay the purchase price and take the property, and a unilateral or optional privilege is given, the exercise of which is dependent upon compliance with its terms, is clearly pointed out. In the first, time is not of the essence of the contract; in the other, it is. It is by no means clear that compliance with the terms of an option or privilege given the purchaser of timber, with a time limit fixed in the deed within which it is to be cut and removed, is a condition either precedent or subsequent. The courts hold, at least the Supreme Court of this state, which is of controlling authority with this court in this case, that the title to the timber, which is not cut within the period fixed, ceases and determines, and this view brings the estate within Blackstone's definition of a base or qualified fee—as "one which has a qualification subjoined thereto and which must be determined whenever the qualification annexed to it is at an end." 2 Blk. 109, § 147 (Jones' Ed. 860). It is neither a condition precedent nor subsequent. Kilpatrick v. Graves, 51 Miss. 432. It is generally held that the equitable maxim that "time is not of the essence of the contract" does not apply to contracts of this character. The authorities upon this question are collected in Rexford v. Southern Woodland Co. (D. C.) 208 Fed. 295. The decree in that case was affirmed. 225 Fed. 1022, 140 C. C. A. 613.

The title to the timber, under the express terms of the deed from Bullock and wife to the Lucas Lumber Company, ceased and determined on November 10, 1915. The right to demand an extension, or to extend such title, with the privilege of cutting and removing it after that day, was dependent upon the tender by plaintiff of the amount stipulated to be paid on or before that day. This was a privilege or option to be exercised by plaintiff upon express terms. Time was made essential to its enforcement—of its essence. Richardson v. Hardwick, 106 U. S. 252, 1 Sup. Ct. 213, 27 L. Ed. 145, was a suit in equity, seeking a decree compelling conveyance, after the time fixed by the contract; complainant having failed to tender the amount on the day. It is said:

"The written contract gives him [the plaintiff] the privilege, or, as counsel calls it, an 'option,' to become equally interested in the land by paying one-half the purchase money, etc., within two years after its date. The contract of itself did not vest him with any interest or estate in the lands. It merely pointed out the mode in which he might acquire an interest, namely, by paying a certain sum of money within a certain time. He did not pay the money within the time limited by the contract, and has never paid it or any part of it."

The court reached the conclusion that:

"The plaintiff having failed to pay the money, or any part of it, within the time limited, the privilege accorded him by the contract was at an end, and all the rights under it ceased."

Mr. Pomeroy, after discussing the principles upon which equity relieves against forfeitures, says:

"It is well settled that, when the parties have so stipulated as to make time of payment of the essence of the contract, within the view of equity, as well as of law, a court of equity cannot relieve a vendee who has made default. With respect to this rule there is no doubt. The only difficulty is in determining when time has thus been made essential. It is also equally certain that the contract is made to depend upon a condition precedent; in other words, when no right shall vest until certain acts have been done, as, for example, until the vendee has paid certain sums at certain specified times, then also a court of equity will not relieve the vendee against the forfeiture incurred by a breach of such conditions precedent." 11 Pom. Eq. § 455.

A failure to keep this distinction in mind, and to note the reason upon which it is based, sometimes leads to confusion of thought, and has brought about some discordant expressions in opinions of courts. It would be inequitable to hold one party bound beyond the time fixed for performance, and permit the other party, at his election, to postpone performance to suit his convenience or interest, with no obligation to perform at any time. This would be especially true in contracts relating to standing timber, the value of which is, as this record discloses, fluctuating—and, to a large extent, speculative. The timber is subject to destruction by forest fire, in which event the owner of the land would have no remedy for loss sustained by its destruction. Again, to permit the optionee to await his convenience to comply with the terms upon which his option depends burdens the owner with obligation to hold the land in its uncleared, nonproducing condition, he paying the tax thereon. If the time for payment fixed by the contract is not the measure of the rights and remedies of the parties, the ques-

tion arises: What measure will be adopted by the court? To say that the tender may be made within a reasonable time is to insert something in the contract to which the parties have not assented, and this neither a court of law nor equity has the power to do.

Conceding that the plaintiff did not intend to abandon its right to call for the extension, the fact remains that, without any fault on the part of defendant, or any act of omission or commission by him, plaintiff failed to comply with the terms of the contract. Its intention cannot affect the right, or duty, of defendant. To the suggestion that defendant only paid $400 for the land with the timber, and that to permit him to hold both with the increased value is inequitable, it is sufficient to say that he purchased at a time when plaintiff had 4 years within which to cut the timber, with the privilege of extending it for 5 additional years, by paying the small sum of $20 a year. It is doubtful whether, with this burden imposed upon the land and its use, the price paid by defendant was not adequate. It was the sum which the owner, Mr. Raper, was willing to accept in a fair, open trade. While the very large increase in the value of the timber may present an interesting question in the domain of ethics, it is not one with which a court of equity can deal—otherwise than by adhering to well-settled principles. Probably no class of contracts have given the courts more anxious thought than those relating to the sale of standing timber with time limit for cutting and removing. Whether they have, in all cases, reached a satisfactory conclusion, in respect to the rights and remedies of the parties, may be open to doubt. When, however, as in this case, the terms of the contract are plain, it would seem that courts of equity should not interfere with the contractual rights and obligations assumed by the parties.

The bill will be dismissed, at the plaintiff's cost.